Good morning, your honors. Colleen Libby on behalf of Jared Bowers. Ms. Martinez is going to brief argue some issues. I'll argue separate issues. I'm gonna reserve four minutes for rebuttal. And how much total time are you taking? I'm gonna take ten minutes. Okay, and you're reserving six. I'm reserving four. Four, sorry. Thank you, your honor. Okay. I'd like to start with the jury instruction issues. In this case, the defendant, Bowers and Mejia, they were entitled to a multiple conspiracy instruction and a buyer and seller instruction. The case law is clear that if defendants could be found to be involved in separate conspiracies, the defendant would be entitled to such a jury instruction. Here, the government has argued that the facts don't support that, but we have what the conspiracy is is the real mystery here. Marmolejos, Mejia, and Bowers are charged with a conspiracy from January 2012 to February 22nd, 2013. Marmolejos is involved in multiple buys that have nothing to do, no connection to Mejia or Bowers. They're not present. They're not at the scene. There's no statements about them. There's no recordings. There's nothing. There are, there is a, the big buy is on January, or February 22nd, and it doesn't involve Marmolejos. It involves a person by the name, a confidential source, and Bowers is in a vehicle with Mejia, and there ends up being a bust. Now, there's, so there's evidence that Black is involved, that he's not a co-conspirator. There's testimony that Black, excuse me, a confidential source, I apologize, works with other people that don't know Bowers or Mejia. There's testimony that the confidential source has no idea who Bowers is. He wasn't planning on seeing Bowers, doesn't know he's coming to the buy. There's no contention, connection to Marmolejos in the confidential source. There's... Council, what's so hard to piece together in terms of the conspiracy? It's obviously that all three, Bowers, Mejia, Marmolejos, they were all joined together at the hip. Bowers and Mejia were the acquirers of the product, and Marmolejos was the street-level distributor. It seems like a pretty simple conspiracy to me. Well, Marmolejos isn't connected to the confidential source... So? Trade at all. So? Well, there's no... He's connected to Bowers, and Bowers is connected to Mejia. But he's not, there's insufficient evidence of the connection on a number of levels. If you look at the factors in the Mo case that the government recently provided the court, there's no evidence of the nature of profits, there's no warning system, we don't know... The transactions aren't standardized, we don't have any deals between Marmolejos and Bowers and Mejia. You don't think the evidence was sufficient for the jury to conclude that Marmolejos was working under Bowers' direction? No, I don't, because the inadmissible hearsay is the lynchpin to that, and my co-counsel will be arguing that. But the government's case... I'm not talking about to Mejia, the connection to Mejia. I agree with you, that's problematic for her client. But your client, there was plenty of evidence that there was a connection between Marmolejos and your client. Just that they knew each other, I mean, just that, I mean, the connection is weak enough where it would be required to give the buyer-seller instruction. The agent testifies, I mean, you can quibble with the reliability of this, but he says, oh no, I recognize Bowers' voice on the call when I'm sitting right there with Marmolejos. That's one call, and that would support the buyer-seller instruction because we don't have a pattern or a history between Marmolejos and Bowers at all. I mean, in the Moe case, Eldridge was the co-conspirator, and he testified that he did all these transactions with Moe, and that they had a warning system, they had this relationship, and the prongs to look at to decide whether it's more than buyer-seller were met because of the testimony of Eldridge. Here, Marmolejos didn't testify, and the government's case falls apart without that. And if you look at Moe, it shows that the threshold to get either the multiple jury instruction or the buyer-seller instruction is very low. And with the evidence in this case and so many different conspiracies brought up, the entitlement to the instruction should have been, it should have been given. But the district court said it covers the buyer-seller instruction to say that they had agreed to supply to another, I think. There's something about doing it to another. Was that...? Well, I mean, that final sentence, adding a couple words, it wouldn't be sufficient. The standard conspiracy instruction, there's a case law that says it's not sufficient to explain the buyer-seller defense instruction. And that's from the Pettig case, P-E-T-T-I-G. And so I agree with you, the court said that, but I don't think the jury would understand the connection, the difference between buyer-seller and the conspiracy just by adding that small amount of language. So if you'd had the opportunity to have this instruction, what conspiracy would you have argued existed? Well, there was a separate conspiracy involving Black and Mejia. Bowers had no connection to the confidential source. I apologize for saying that. So that would be the main one. There was also testimony that Marmolejos had other suppliers, multiple other suppliers, that's in the evidence. And that's another conspiracy. And if you look at the Anguino case, it indicates that if the government can only point to transactions that only include an agent and the co-conspirator, then there's another conspiracy going on. We don't have any information for five of the transactions. We don't know where Marmolejos got the... We have no idea who the supplier is. We know nothing about that. Marmolejos didn't testify. So I would like to make one quick reference to the digital scale issue. Here, in opening statements, the defense attorney for Bowers specifically said there's no drug evidence connecting my client to anything. On cross-examination of Agent Paranto, Agent Paranto testified that there was no drug evidence found from Bowers or any of his property. Marmolejos takes the Fifth Amendment. The government has to call Agent Paranto again on rebuttal. Oh, we found a digital scale on Bowers when we searched him. It wasn't produced in discovery. The modified report came up later. It's incredibly prejudicial. The defendant's entire case, I mean, relied heavily on this absence of evidence, physical evidence connecting the defendant. And in this case, it's similar to the situation, another case where a bail receipt was a connection to the drug situation and that violation of local rules required reversal. It's unfairly prejudicial to let the digital scale evidence come in. Even though it was stricken, that didn't remedy the harm. And so we respectfully request that the conviction be reversed. Okay. May it please the Court, my name is Jane Martinez. I represent Christopher Mejia. Today I would like to focus on the hearsay statements that the Court allowed in through Agent Paranto as statements of a co-conspirator. And I would like to save five minutes of my time for rebuttal. So I would like to turn first to the photo. Apparently, during this conversation, after both Mejia and Bowers had been arrested, Agent Paranto wanted another meeting with Marmolejos and he wanted to gather more evidence, try to get some... perhaps set up another abai. And during this conversation, Paranto testified that he showed him a picture and said, this is my cousin. Of course, there are multiple problems with that. Besides the co-conspirator, besides its admissibility under 801 D2E, there's also the fact that no one was able to cross-examine Officer Paranto about are there other cousins? Are they even cousins? I mean, there was even the judge in this case even stated on the record, I don't believe that they're cousins. So any of these statements that Officer Paranto made, there was no way to cross-examine any of them because Marmolejos did not testify. But back to the photo. There are multiple problems with the photo. Of course, under evidence rule 801 D2E, before a co-conspirator statement can come in, there are several hurdles that the government has to get over. And as Ms. Libby was saying, we believe that the statements from this February 26 meeting between Marmolejos and Paranto, it is the government's strongest evidence linking these three people together. So are you concerned that Marmolejo and Mejia were not in fact cousins? Is that really relevant to anything as to whether they really were cousins or whether he just referred to somebody that he called his cousin and then he showed the photo? So Paranto testified that up until this date they were not sure that all these people were working together and then they knew from previous discussions that a cousin was a backup source. The cousin was never named. Marmolejos' cousin was never named. And so on this day after the arrest, he apparently opens up his cell phone and says, this is my cousin. So that gives the government their evidence starting to link these three people together. And so we don't know if the photo was of Marmolejos and we don't know if there was another cousin who was a supplier. We don't have any way to question Marmolejos on those topics. As far as one of the hurdles in admitting this as a co-conspirator statement is that the statement has to be made in furtherance of a conspiracy. And showing a photo of, hey this is my cousin who was arrested and is in jail now with no allegation at all that he's trying to orchestrate things from the jail that is not in furtherance of a conspiracy. That's historical narrative. This is my cousin who has been arrested and it has nothing to do with furthering any existing conspiracy that involves Mejia. Now there is some talk of negotiating a new deal with new drugs because these confidential sources drugs were confiscated with different money because all of the money was confiscated. So there is talk of Marmolejos moving in and saying hey to Pronto we can this is all according to Pronto of course. There might be a chance for an additional sale here but that's a wholly different buyer-seller transaction between those two. And there is no way that Mejia was involved in any of that. So all of these statements and the photo could not have been in furtherance of any conspiracy that Mejia was involved in which by the way according to the indictment and jury instruction number 20 ranged from October 17, 2012 to February 22, 2013. These statements were all made on the 26th of February after the arrests of Bowers and Mejia. I'd like to save the remaining time for rebuttal unless the court has questions. Okay, may do so. May it please the court I'm Joanne Farrington appearing on behalf of the United States in this case. Starting with the line of argument relating to whether this was all just buyer-seller I'm baffled by that because the three co-conspirators in this case were Bowers Mejia and Marmolejo and there were no buys or sales between the three of them as far as the evidence of trial showed. The three of them were co-conspirators. There were sales to Officer Paranto and there were buys from CS but the core conspiracy among the three conspirators didn't involve buyer-seller. Not only is that not an issue as to the sufficiency of evidence but because of a total lack of evidence of a buyer-seller relationship there was no need for jury instruction on that point. The second issue that was focused on Were the charges just named those three conspirators? Yes, Your Honor. The conspiracy charged those three conspirators with the conspiracy and as I said So the position is that CS was just outside of the conspiracy and purchased some stuff from him? Well, we would not take the position that it would have been impossible to charge him hypothetically but that would have complicated the case and this conspiracy as framed is clear. CS certainly was involved as a major source of heroin for this ongoing conspiracy. There were multiple sales over a period of time  large purchase of heroin attempted purchase of heroin a full pound but he was not part of the conspiracy as charged or as proved at trial. For similar reasons the multiple conspiracy jury charge was also not necessary because I think I'd like to quote just from the Moe case that I cited to you in my 28J letter that a multiple conspiracy charge to the jury is only required when there are potential multiple conspiracies involving defendants before the jury unrelated to the conspiracy that's charged. Obviously many conspiracies involve additional conspiracies within them. For instance, here there was a conspiracy I think we could have charged Mejia and Bowers with a specific conspiracy to possess with intent to sell the heroin on the date that they were arrested but this was an overarching conspiracy among the two and there were no additional conspiracies involving either of those two defendants who were before the jury. I'm sorry, Your Honor, I interrupted you. You should continue and I'll jump in. I was going to say the defendants argue Marmoleos had additional sources of supply Marmoleos may have been involved in other conspiracies. He may have been, but he was not on trial before the jury there was no spillover effect from potential guilt of Marmoleos that could have confused the jury and similarly C.S. was probably involved in other conspiracies but he also was not a defendant before the jury and there could have been no spillover effect from evidence concerning his activities to the defendants. Both of those arguments I think just miss the point about how this particular case was framed and charged and proven to the jury. I shouldn't have interrupted you because I have a slightly different question. Let's put aside the post-Mejia arrest statement that Marmoleos makes to the officer What else did you have that connected Mejia to this conspiracy during the dates alleged in the indictment? Well, the primary connection between Mejia and this indictment were Marmoleos' reference to the fact that his cousin and ours That's not going to help if you don't get the statement in after I'm saying put that statement aside. What else do you have for the October to February dates alleged in the indictment? There was the ongoing purchases starting in December from C.S. by Mejia which the jury could have inferred given the clear proof of a conspiracy between Bowers and Mejia that they were going to purchase a large amount of heroin from C.S. the jury could have legitimately inferred that those purchases weren't further into that same conspiracy. So we have a situation setting aside the evidence There were only three statements that Marmoleos made that came into evidence after the arrest but setting that aside we have this clear ongoing relationship between Bowers and Marmoleos. We have a clear relationship between Bowers and Mejia The relationship between Bowers and Mejia you're saying is clear throughout this period because they got busted together on February 22nd? Well I'm saying that the fact that they have this purchase together they have clearly a trusting relationship. They have thousands of dollars together. Tens of thousands of dollars together They're traveling together to make this large purchase of heroin. I think that yes the jury could legitimately have inferred that very recent similar purchases of heroin by Mejia from the same source was part of the same conspiracy. Yes I do think the jury could have inferred that but I don't think that there was anything improper about the admission of the evidence after the arrest. Okay and maybe you can shift to that then. Okay. I mean you heard your opponent's argument. It does seem kind of a stretch to say that a statement made several days after your indictment alleged the conspiracy ended were somehow in furtherance of that same conspiracy. That just seems a little bit off right? Well first of all the dates and indictments are always on or about your honor and a few days is generally held and there is case law to this effect that a few days difference one way or the other doesn't make a difference that's well within the bounds of of charging conspiracies. Okay but Mejia is involuntarily withdrawn from the conspiracy. He has not withdrawn from the conspiracy. I'm saying involuntarily. He can't benefit any further once he's arrested. And I think that the Taylor case that is cited in my brief is probably. Your best case I agree. It's a very good case on this because in that case the co-conspirators were arrested the conspiracy another co-conspirator just like Marmoleos in this case tries to set up yet another deal and this court had no trouble in saying yes that's admissible there was no affirmative withdrawal. I know but wasn't the key fact there that the person making the statement didn't know that the co-conspirator had been arrested? How could his knowledge be relevant to whether or not the co-conspirator has withdrawn from the conspiracy? It's not. And the case law is quite clear that in order to withdraw from a conspiracy you have to take some affirmative step something positive has to be done and the burden is on the defendant to show that he has withdrawn from a conspiracy it's not something that just happens sometimes a co-conspirator decides to cooperate that's a withdrawal from the conspiracy sometimes the arrest makes the culmination of the conspiracy impossible because if you conspire to rob a bank on a certain date and you get arrested and that date passes then that particular conspiracy is at an end All those are fair points based on Taylor so let's assume that the conspiracy was still in motion even after Mejia was arrested Bowers and Marmolejos are still trying to negotiate their deal how does showing the picture and saying yeah this is my cousin how does that actually further the conspiracy that's still in operation? Because at this point Marmolejos and Paranto are they're forging their relationship this is an I trust you he's developing an ongoing relationship with somebody he hopes to continue to sell drugs to by developing his trust by telling him these are my sources these are my guys these are my boys I've got sources of heroin I can supply you this is who they are in fact he even tried at one point although it fell apart to introduce Officer Paranto to Mr. Bowers it's a matter of building a level of trust with the people that you're dealing with in this illegal enterprise and telling them information about who you're dealing with who your sources are who the other people in the conspiracy are that was one way of doing it I think that's why it advances the conspiracy I would like to briefly address the issue of the digital scale because it was brought up briefly before the scale was physical evidence that was available to the defense to view it was not withheld it was not hidden we do know and agree that there was a discovery violation in a jank statement that should have been produced wasn't produced it was the government's fault the government acknowledges that the circumstances of how it happened aren't clear on the record there was no evidentiary inquiry into that but it's quite clear that there was a brief reference to the scale the prosecutor clearly confused when there was an objection made that there had not been disclosure of this immediately withdrew her question it's not important I'm withdrawing the question but the most significant thing is that the judge immediately gave a very strong cautionary instruction and then returned to the issue after trial when a motion for a mistrial was filed the judge said I've listened to that segment of the trial again I got very good visual indications from the jury that they understood and acknowledged my instruction this was harmless to the extent that we are going to have jury trials there are occasionally going to be missteps there are going to be things that the juries have to be instructed on by the judges this was handled exactly as it should have been handled and I think it's quite clear that there was an error made  and it was harmless to the overall outcome of the case there are a number of other issues that have been raised by the defense in their briefs I'm willing to rely on my briefing on that unless the court has questions given that they were not argued in the opening it doesn't appear that we have questions at this time counsel thank you your honors with regard to the multiple jury instruction the Moe case is instructive because in that case the defendant was tried alone without any co-conspirators no co-defendants here we have a case where the co-conspirators are tried together Marmoleos wasn't but Mejia and Bowers were tried together so there is spillover effect of guilt from having information about these other conspiracies with the CS who wasn't charged in the conspiracy and I think Moe is instructive that in this case you don't need that much evidence to get the multiple jury and conspiracy instruction it's not a high threshold so it should have been given in this case where there were a lot of unknowns regarding the relationships amongst the parties there are facts that I would like to point out regarding the entitlement to the instruction there is no evidence connecting Bowers physical evidence there is no recordings of Bowers there is multiple transactions that he is not connected with all involving Marmoleos the evidence they rely on is him being seen in the vicinity for the most part which isn't sufficient the CS testified he worked with multiple other buyers but not Bowers, didn't know Bowers the voice recognition issue that was raised at trial for the first time it wasn't provided in a police report in the initial materials and it wasn't provided at the grand jury the defense attorney objected to the voice recognition testimony and that was something that came in late just like the digital scale to try and connect the dots in this case that basically fell apart for the government when Marmoleos refused to testify and if the court doesn't have any questions for me I would defer to my briefing unless it has any questions Thank you Ms. Libby. Ms. Martinez Your Honor with respect to the government's argument they had evidence that these people were working together if the court would like to look at pages 148 and 162 of Mejia's excerpt of record the question was asked of Agent Parenteau, when did you learn that there was a relationship between Mejia and Bowers? Answer during our conversation on February 26th and then further February 26th being after the arrest of Mejia and Bowers and then at page 162 of Mejia's excerpt of record which is actually page 135 of the transcript the defense counsel asks Agent Parenteau, so all you can say is that Marmoleos was seen getting into Bowers' vehicle but in terms of whether Bowers was directing him or working with him, you would have to speculate about that, wouldn't you? Answer, yes. Question, and whether he was working with or directed by Mr. Mejia at any point in his life would you have to speculate about that as well? Answer, up until February 26th. So that February 26th, those statements that Parenteau introduced to the jury on the events that happened on February 26th were very, very key to the government's case. I thought though that although the government didn't mention it here, I thought there were a ton of phone calls during the relevant time period between your client and that number that's associated with My recollection was that there were some phone calls to a like a 745 number I don't recall there being a ton of phone calls between I mean more than a hundred is what I remember the number being a ton, like there was a close relationship between your client and whoever he was calling at that number and then the government put on evidence that that number in fact was associated with Bowers I don't recall Thank you counsel. With that, that will conclude the oral argument calendar and the court the court is in recess until tomorrow Thank you This court for this session is adjourned
judges: Canby, Bybee, Watford